WARREN BEVIER, Plaintiff, v. THE PRESIDENT, MAN-
AGERS AND COMPANY OF THE DELAWARE AND
HUDSON CANAL COMPANY, Defendants.

*Fire started by sparks from engine— identification of engine — duty of railroad as
to condition of engine —Negligence on the part of the plaintiff—duty of, as to
putting out fire.*

In an action to recover damages for the burning of woodland, by a fire started
by the negligence of a railroad company in allowing sparks and coals to escape
from its engines, the plaintiff is not required to prove which one of the
defendant's engines set the fire.

Where he is unable to identify the engine that set the fire, by name or number,
or by any other designation, if he prove either by the manner in which it was
operated or by the extent to which it scattered fire that it was so far out of
repair as to charge the company with negligence, it is sufficient.

The counsel for the defendant requested the court to charge that the defendants
were not bound to use any other appliances than such as are known in practi-
cal use. The court so charged, adding: "that is, the known and recognized
means for preventing the escape of sparks from a locomotive, and such as are
best adapted to that purpose." *Held*, that the qualification added by the
court was proper.

The court charged that the plaintiff was not bound to use extraordinary means
to extinguish or prevent the spread of the fire. *Held*, that this was proper.

The defendant's counsel requested the court to charge that, if the plaintiff allowed
dry limbs, brush, grass and other combustible matter to lie and accumulate on his
premises adjacent to the line of the railroad, and that if such accumulation con-
tributed to produce the fire, by means of which the premises were burned over,
he was not entitled to recover. *Held*, that the request was properly refused;
that, whether or not the plaintiff had been guilty of negligence contributing to
the injury, was a question for the jury; it was not the province of the court to
instruct the jury that certain specified acts or omissions constitute negligence.

MOTION for a new trial on a case and exceptions ordered to be
heard in the first instance at the General Term, after a verdict in
favor of the plaintiff. The action was brought to recover damages
occasioned by defendants' alleged negligence in setting fire to, and
destroying plaintiff's woodland.

*Richards & Sessions*, for the plaintiff.

*Henry Smyth*, for the defendants. The court erred in declining to charge as requested, "that the defendants were not bound to use any other appliances than such as are in known practical use." This is the law, and they had a right to have it charged without qualification. The qualification, "such as are best adapted to that purpose," imposed too severe a rule. (*Lackawanna and B. R. R. Co.* v. *Doak*, 52 Penn. St., 379; *Myer* v. *Clark*, 45 N. Y., 285; *Frankfort and B. R. R. Co.* v. *Phila. and T. R. R. Co.*, 54 Penn. St., 345.) The plaintiff was bound to use all reasonable care and diligence to protect himself from damage from the fire, and it was erroneous to state to the jury that plaintiff's duty was limited to a case "when it was practical for him readily and easily to have stopped the fire." (*Keese* v. *Chi. and N. W. R. R. Co.*, 30 Iowa, 78; *Kellogg* v. *Chi. and N. W. R. R. Co.*, 26 Wis., 223; Shearman & R. on Negligence, § 335.)

MULLIN, P. J.:

This action is brought to recover damages for negligently setting fire to the woodland of the plaintiff, and destroying part of the wood growing thereon and injuring another part. The defendant's railroad extends from Albany to Binghamton, and passes through the farm of the plaintiff. On the 24th of May, 1871, an engine of the defendant passed over the road, scattering fire from the smokestack and fire-pan in large quantities, and soon thereafter fire appeared in a pile of brush on defendant's side of the fence. It extended from thence into a pile of brush on plaintiff's side of the fence and then extended into the plaintiff's woodland, and thus caused the injury complained of. The jury rendered a verdict in favor of the plaintiff for $298.47. A motion was made for a new trial, which was denied. Time was given to the defendant to prepare and serve exceptions, and they were ordered to be heard in the General Term in the first instance. The General Term in the third department ordered the case to be heard in this department, two of the judges assigned to hold the General Term not being permitted by law to sit in the case.

The case will be most easily disposed of, by considering the exceptions of the defendant in the order they are set out in the points. The first exception is, that the court erred in allowing the

evidence that the defendant changed the stack of the engine Unadilla after the fire. The plaintiff gave evidence, by several witnesses, tending to prove that the fire was set by the engine Unadilla (No. 26), and that its apparatus for preventing the escape of the fire was defective. The defendant called a number of witnesses, who testified that the apparatus of the Unadilla, for preventing the escape of fire, was in perfect order, having been recently put in thorough repair, and that No. 26 did not leave Binghamton the afternoon of the fire, until after the fire was shown to have been set. This evidence made it necessary for the plaintiff to prove, if he could, that it was some other engine of the defendant that caused the fire. Proof was then given that engine No. 13 passed only a short time before the fire appeared upon the side of the railroad adjacent to plaintiff's woodland.

Thomas Seally was called as a witness on the part of the plaintiff, and described the smoke-stack, etc., of the Unadilla, and what repairs, etc., had been made upon it. His evidence tended to prove that it was in good order and not liable to scatter fire. On cross-examination by plaintiff's counsel, the witness stated that shortly after the fire he removed the smoke-stack from No. 26 and put on a different one, different in shape and general outline. The plaintiff's counsel then put the following question to the witness: "Why did you go to the expense of taking one off and putting another on this particular engine?" The defendant's counsel objected to the question, on the ground that the case is to be determined upon the condition of the engine at the time, and that no act of theirs, made even with the object of adding security against fire afterwards, is legitimate to be considered in this case. The objection was overruled and the defendant's counsel excepted. Had this question been put to a witness on the part of the plaintiff, it might be assumed that the object of the question was to prove that the defendant knew the engine to be defective and made the repairs for that reason; such evidence would be clearly incompetent. The question, however, was put to defendant's witness on cross-examination and was competent to test the accuracy of the witness as to the condition of the engine. If it had been repaired as extensively as he represented, the question would be a very natural one why, if that was true, was another smoke-stack put on so soon after the

fire? The question was competent on cross-examination. If the question was incompetent it was not answered. The reason for the change was given subsequently by the witness, but in answer to another and different question, and the question does not appear to have been objected to. The next exception is to the charge of the judge, that the jury were at liberty to find that the fire may have come from the engine No. 13, as to the condition of which there was no proof; and it was claimed that he also erred in refusing to charge, as the fact was, that " the undisputed proof in the case is, that locomotive No. 13 left Binghamton at 10.50 and reached Oneonta at 5.45 that day, and that it was impossible for her to have been here on the afternoon of the eleventh. It was certainly improper for the judge to have said what he did as to No. 13, in his charge, if as he says, speaking of the proof as to her, " I do not know what it is myself."

The plaintiff was not bound to prove which one of the defendant's engines set the fire. To require such proof would, in many instances, deprive the plaintiff of relief. A railroad company is not bound to name or number its engines, and if not named or numbered, or in some other way distinguished from other engines of the company, it would be impossible for the injured party to establish a right to recover. It is incumbent on the plaintiff to prove in an action for injury to property from fire from an engine, that an engine of defendant scattered from its fire-pan or smoke-stack, fire in such quantity and in coals of such size as might kindle a fire and as could not be thrown off from an engine whose smoke-stack, etc., were in proper repair. Upon the evidence the jury had the right to find that engine No. 13, which passed only a short time before, set the fire. (*Bedell* v. *Long Island R. R. Co.*, 44 N. Y., 367, 369.) If a plaintiff cannot identify the engine, that sets a fire by which he is injured, by name or number or other designation, he must make out his case by showing either by the manner in which it was operated, or the extent to which it scattered fire, that it was so far out of repair as to charge the company with negligence.

The court properly refused to charge that the evidence stated in the offer was undisputed, or that it was impossible, for the reasons assigned, for engine No. 13 to be at the place where the fire was set on the afternoon of the eleventh. It was for the jury to say

whether there is any dispute as to matter testified to by the witnesses, and it not unfrequently happens that before such a charge could be properly made, that the judge would be obliged to read over the whole or a considerable part of the evidence. This would lead to unnecessary delay without any corresponding benefit. The remark of the judge, which the counsel complains of, illustrates the impropriety of requiring the judge to assume to pass upon the extent and weight of the evidence in the cause.

The counsel excepted to the refusal to charge as requested, that the defendants were not bound to use any other appliances than such as are in known practical use, and claimed that the court had no right to qualify it by adding the words "such as are best adapted to that purpose."

FOLGER, J., in *Steinweg* v. *The Erie Railway* (43 N. Y., 126), held it to be negligence in a carrier of passengers, if it did not adopt the most approved modes of construction and machinery in known use in the business, and the best precautions in known practical use for securing safety. (2 Redf. on Railways, 189.) The learned judge in his charge did not enlarge this rule. The "most approved spark arresters or smoke-stacks," are those best adapted to the purposes to which they are to be applied. To require the company merely to use such apparatus as is in common use, would be a mere evasion of the rule, and in practice exempt carriers in a large number of cases from all liability, as it is known that they sometimes use machines very defective in construction and not well calculated for the use to which they are to be applied, when it is notorious that machines much better fitted for use are in practical use by other railroad companies. The qualification added by the judge, to the charge, was entirely proper, and was a correct application of the rule above-mentioned, laid down by the Court of Appeals.

The defendants' counsel requested the court to charge the jury that defendants' authority to use a steam engine upon the railroad, is an authority to emit sparks therefrom, and if the most approved means, which science and skill have invented and applied to prevent sparks from causing injuries, are employed by the companies charged with negligence, the defendants are not liable in case damages are occasioned by fire communicated from its engine. The learned judge said in reply, I have already charged that

defendants would not be liable for fire caused from sparks which came from the smoke-stack, when that smoke-stack was properly protected by the most approved means which science and skill have invented, and experience has shown necessary to prevent the passage of sparks therefrom, and those means were used with skill and care.

The counsel, in his fourth point, says it was not proper to confine the rule to the smoke-stack, after what he had said as to the fire-box, in his charge, nor was it proper to add that the appliances must be such as experience had shown necessary to prevent the passage of the sparks. It was the duty of the counsel to call the attention of the judge to the omission, in the part of the charge under consideration, of the ash-pan when speaking of the smoke-stack.

It is quite apparent that it was inadvertence if it was of any materiality in the case. No reason is perceived or suggested why the court should have repeated its remarks as to the smoke-stack and omitted to refer to the ash-pan. It is too late now to complain of the omission. It is equally obvious that the learned judge did not intend to charge that the smoke-stack and other appliances must be such as to arrest all sparks; nor is the language, when taken in connection with the whole charge, fairly susceptible of such a construction.

The defendant's counsel excepted to the part of the charge, in which the court told the jury that plaintiff's duty in striving to prevent the spread of the fire was limited to a case where it was practical, readily and easily to have stopped the fire. The court in its charge did use the language which the counsel has incorporated in the exceptions. But when the counsel excepted to that clause of the charge the judge said that what he intended to charge was that he was not bound to use extraordinary means to accomplish that end. The charge, as thus modified and explained, was correct.

The defendant's counsel requested the court to charge, that if the plaintiff suffered dry limbs and brush and grass and other combustible matter to lie or accumulate on his premises adjacent to the line of the railroad and that contributed to produce the fire, by means of which the premises were burned over, he is not entitled to recover. The court refused so to charge and defendant's counsel excepted. It is not the province of the court to instruct a jury that certain specified acts or omissions constitute negligence. That question is for them to pass upon under proper instructions from the

court. If the court could give such an instruction the jury would be bound by it, and thus the court would assume the province of the jury and determine the facts as well as the law.

The defendant's counsel excepts to the rejection by the court of evidence as to how much plaintiff's woodland was depreciated in value by the fire, and how much less it was worth by reason of its having been burned. The measure of the damages the plaintiff was entitled to recover was the difference in value of the timber land as it was before and as it was after the fire. (*Van Deusen v. Young*, 29 N. Y., 36; *Morehouse v. Mathews*, 2 Comst., 514.) The evidence offered did not tend to establish this measure of damages and was, therefore, properly rejected.

The counsel excepted to the rejection of evidence, as to how much the timber was damaged. The evidence was properly rejected for the reason assigned in disposing of the last preceding exception. The counsel refers to the case of *Whitbeck v. New York Central Railroad Company* (36 Barb., 644). That case was decided in 1862, and if the case is in conflict with that of *Van Deusen v. Young* (*supra*) then it is overruled by that case. The property injured, in the case in 36 Barbour (*supra*) was fruit trees, and the same rule of damages cannot be applied to them as to woodland.

The motion for a new trial must be denied and judgment ordered for plaintiff on the verdict.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Motion for new trial denied, and judgment ordered for plaintiff on the verdict.